# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 14-1057V
Filed: September 25, 2015

* * * * * * * * * * * * * * * * * * * * * * * * * *

H.S., by his parents and natural guardians, GREGORY and SANDRA SIMPSON,

      Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

      Respondent.

Finding of Fact; Damages; Pain and Suffering; Syncope; Skull Fracture: C1 vertebra Fracture; Medical Restriction; Special Processing Unit ("SPU")

* * * * * * * * * * * * * * * * * * * * * * * * * *

<u>Renee Gentry</u>, Shoemaker, Gentry & Knickelbein, Vienna, VA, for petitioner.
<u>Alexis Babckock</u>, U.S. Department of Justice, Washington, D.C., for respondent.

## DECISION AWARDING DAMAGES[1]

**Dorsey,** Special Master:

      On October 29, 2014, Gregory and Sandra Simpson ["petitioners"] filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, et seq, [the "Vaccine Act" or "Program"] on behalf of their minor son, H.S. The petition alleges that following the administration of tentanus, diptheria and acellular pertussis ("Tdap") and meningococcal vaccines on July 25, 2012, H.S. experienced syncope and fell to the floor fracturing his skull. Petition at 1. The case was assigned to the Special Processing Unit ["SPU"].

---

[1] Because this unpublished ruling contains a reasoned explanation for the action in this case, it will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002).  In accordance with Vaccine Rule 18(b), petitioners have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

**I.   Procedural History**

On November 20, 2014, an initial status conference was held with the staff attorney managing this case. During the status conference, it was noted that the records filed to that date did not readily identify any physical manifestation of H.S.'s injury lasting at least six months. *See* Order, February 2, 2015 (ECF No. 20). On January 12, 2015, respondent's counsel informally requested a fact determination indicating whether H.S.'s injury persisted for at least six months. *See* ECF No. 20.

On February 2, 2015, Chief Special Master Vowell ordered the parties to file a joint statement indicating what facts are agreed upon and what facts, if any, are in dispute. *Id*. The parties filed their report on March 12, 2015. *See* Joint Status Report (ECF No. 21). On March 13, 2015, Chief Special Master Vowell ruled that H.S.'s injury persisted for at least six months. *See* Finding of Fact and Conclusion of Law, March 12, 2015 (ECF No. 22). Respondent subsequently conceded entitlement and a ruling on entitlement was issued on May 18, 2015, finding petitioners entitled to compensation. *See* Ruling on Entitlement, May 18, 2015 (ECF No. 26).

The case was reassigned to my docket on September 4, 2015. *See* Notice of Reassignment, September 4, 2015 (ECF No. 34).

The parties continued to negotiate regarding the appropriate amount of damages until September 8, 2015, at which time the parties submitted a joint status report indicating that they were at an impasse regarding the appropriate compensation for H.S.'s pain and suffering and requested a ruling on that issue. *See* Joint Status Report, September 8, 2015 (ECF No. 35). I ordered the parties to file simultaneous briefs regarding pain and suffering, which they did on September 15, 2015. *See* Order (Non-PDF), September 10, 2015; Brief Regarding Pain and Suffering, September 15, 2015 (ECF No. 36); Memorandum, September 15, 2015 (ECF No. 37). On September 25, 2015, the parties filed a joint stipulation indicating that "Other than Pain & Suffering there is only one other item of compensation: Past Expenses of $212.40." *See* Joint Status Report, September 25, 2015 (ECF No. 39).

The case is now ripe for a determination regarding H.S.'s pain and suffering and an award of damages.

**II.   Fact History**

According to the parties' joint report, the following facts are undisputed (*see* ECF No. 21):

H.S. was born on February 7, 2001. He received his Tdap and meningococcal vaccinations on July 25, 2015. Ex. 4-1, p. 14. After receiving those vaccinations, he experienced an episode of syncope and hit the back of his head. *Id*., p. 36. At urgent care, a head CT showed a nondisplaced right occipital skull fracture without bleeding

and a neck CT showed a fracture along the right lateral mass of C1 vertebra, extending into vertebral foramen. *Id*., pp. 38-39.

H.S. was referred to Westchester Medical Center for further evaluation and was hospitalized overnight. *See generally* Ex. 3. A brain MRI was normal. *Id*., pp. 23-24. Following observation, Dr. Michael Tobias discharged H.S. home with a hard neck collar. *Id*., p. 3. His injuries were believed to be most likely caused by a reaction to Menactra. *Id*., p. 44.

In a letter dated August 15, 2012, H.S.'s pediatrician, Dr. Richard Fuchs, indicated that H.S. would remain in a neck brace through the middle of September of that year. Ex. 6, p. 23. Dr. Fuchs further noted that "Following [H.S.]'s confinement to the neck brace, it will still be medically necessary to excuse him from gym, recess and sports for an additional six to eight week period. .Due to the risk of serious consequences if H.S. were to be reinjured, it will be medically necessary to provide a one-on-one aid for H.S. while he is in school for the initial six-eight weeks after his immobilizing brace is removed." *Id*.

On September 6, 2012, H.S. experienced a second episode of syncope while at school. Ex. 2, pp. 16-18. He was sent to the hospital, but was discharged after a normal physical examination. *Id*. At a subsequent well-child visit on October 27, 2012, Dr. Stuart Tashman felt that the September syncope episode was caused by H.S.'s neck collar being too tight and compromising circulation. Ex. 1, p. 2. Although H.S. had no headaches, weakness, neck pain, and was not taking any medication, Dr. Tashman noted that H.S. "is not allowed to play, gym, ride a bike or play any sports for the following year." *Id*.

H.S. saw Dr. Tobias for a follow-up on April 1, 2013. Ex. 6, p. 5. He was doing well clinically and had recovered from his injury. *Id*. Dr. Tobias cleared H.S. to return to gym class at that time. *Id*. H.S. was later cleared to resume all activities without restriction on September 30, 2013. Ex. 1, p. 12.

### III.     Contentions of the Parties

Respondent stresses that based on the record of this case, it appears that H.S. fully recovered. ECF No. 36 at 6. Respondent notes that H.S. was pronounced to be doing well and was said to have recovered from his injury after only three months and that all of his medical restrictions were lifted after about a year. *Id*. Respondent also points out that it was not even clear that H.S. had 6 months of sequelae until the chief special master ruled that the medical restriction was evidence that the skull fracture had not fully healed despite the lack of any outward symptoms. *Id*. at 6, fn. 3. Respondent suggests an award of $50,000.00. *Id*. at 8.

Petitioners do not indicate any proposed award, but stress that it should be more than *de minimis*. *Id*. at 3. Though acknowledging that H.S. no longer experiences

physical pain from his fracture, they claim that he has ongoing psychological and emotional pain.  ECF No. 37 at 4. They stress that H.S. experienced a year of uncertainty caused by his doctors telling him of severe consequences of re-injury.  *Id*. at 5.  They also stress that throughout his recovery he experienced isolation from friends and interests and that such isolation was particularly difficult for a junior-high student such as H.S.  *Id*.

Despite the lifting of all restrictions noted in the medical records, petitioners assert, based on a declaration by H.S.'s mother, that H.S. is still is barred from contact sports.  *Id*. at 4.  They also assert, again based the same declaration, that H.S. now experiences ongoing anxiety and emotional distress related to needles, asserting one instance where in H.S. was allegedly given Diazapam (valium) prior to a contrast injection for MRI. *Id*.

## IV.     Discussion

After review of the entire record as well as the parties' briefing, I find that $60,000.00 represents a fair and appropriate amount of compensation for H.S.'s past and future pain and suffering.  This amount accounts for the fact that H.S. had head trauma, concussion, and skull and C1 vertebra fractures, requiring a hard plastic cervical immobilizing brace for six weeks, as evidenced by Dr. Fuch's records (Ex. 4 at 13; see also Ex. 4 at 35, 38).  Moreover, it also reflects the fact that he was restricted from gym, play or sports until April 1, 2013, and unable to return to all activities until September 20, 2013.

Furthermore, this finding is in accord with prior awards within the Vaccine Program.  Compensation for syncope claims in the Vaccine Program range from $25,000.00 to $175,000.00.[2]  *See Doenges v. HHS*, 11-893v (Fed. Cl. Spec. Mstr. May 22, 2014) (awarding $25,000.00 for postural orthostatic tachycardia syndrome (POTS), syncope, neurologic impairments, including a seizure disorder, physical impairments, conversion disorder, and/or other injuries.), and *Stark v. HHS*, No. 13-115V, 2014 WL 346450 (Fed. Cl. Spec. Mstr. Jan. 6, 2014) (awarding $175,000.00 for syncope resulting in severe head trauma, right subdural hemotoma, non-depressed skull fracture, seizure disorder, post-traumatic cognitive and physical impairments, headaches, fatigue, dizziness).

Significantly, however, many of the prior syncope cases resulted in either permanent injury or significant future medical expenses, neither of which is present in the instant case.  *See, e.g. Stark, supra; see also DiTomasso v. HHS*, No. 09-611V, 2011 WL 1490343 (Fed. Cl. Spec. Mstr. Mar. 29, 2011) (awarding $70,000.00 for syncope and fall with injury to face, including damage to several teeth requiring future dental care), *Neff v. HHS*, No. 08-0906V, 2010 WL 2710646 (Fed. Cl. Spec. Mstr. June

---

[2] Respondent cited an additional case, *Klug v. HHS*, No. 10-574V, 2012 WL 5210575 (Fed. Cl. Spec. Mstr. Sept. 24, 2012), which awarded $20,000.00.  That case, however, does not appear to involve syncope or skull fracture.

15, 2010) (awarding $110,000.00 for syncope resulting in concussion, intracranial hemorrhage and ongoing loss of sense of smell.) Prior syncope cases without apparent ongoing or future medical issues had awards ranging from $25,000.00 to $40,000.00. *See, e.g. Doenges, supra; see also Jones v. HHS*, 09-670v (Fed. Cl. Spec. Mstr. Mar. 12, 2012) (awarding $40,000.00 for syncope, allergic reaction, and symptoms of orthostatic hypotension). [3]

Petitioners have stressed that the instant case is not simply one of syncope, but also skull fracture, a serious injury with accompanying restrictions and emotional stress. ECF No. 37 at 3. Respondent, on the other hand, has stressed that H.S. has made a complete physical recovery. ECF No. 36 at 6. An award of $60,000.00 in this case, falling below the amounts previously awarded where permanent injury is at issue, but above the lesser amounts previously awarded, reflects that H.S. experienced a significant, but non-permanent injury. To the extent petitioners argued that H.S. has ongoing restriction from contact sports and continued emotional stress, those assertions do not appear to be substantiated by any medical records filed in this case.

## V. Conclusion

For all of the reasons described above, and based on consideration of the record as a whole, I find that $60,000.00 represents a fair and appropriate amount of compensation for H.S.'s past and future pain and suffering. In addition, I find based on the parties' joint stipulation, that petitioner is also entitled to compensation for $212.40 in past unreimbursable medical expenses.

**Therefore, I award petitioner a lump sum payment of $60,212.40 in the form of a check payable to petitioners, Gregory and Sandra Simpson as guardians/conservators of H.S., for the benefit of H.S.** This amount represents compensation for all damages that would be available under § 300aa-15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[4]

                          **s/ Nora Beth Dorsey**
                          Nora Beth Dorsey
                          Chief Special Master

---

[3] I am also mindful of the fact that these lesser prior awards were based upon agreements reached by the parties rather than being the result of reasoned decisions in contested cases. Some of these awards may have reflected factors related to litigative risk or other unstated considerations.

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.